OPINION OF THE COURT
Louis B. York, J.
This is a motion to preclude the testimony of plaintiff’s expert witness on the relationship between the plaintiff’s alleged worsening asthma condition and secondhand smoke for a relatively short period of time. Because the court concludes that a substantial portion of the scientific and medical com *224 munity has concluded that these two conditions exist in a cause and effect relationship, the motion is denied.
The plaintiff sues defendant, her former employer, for the damage she continues to suffer as a result of its failure to accommodate her acute sensitivity to tobacco smoke and the consequential aggravation of her existing asthma condition.
Plaintiff intends to offer expert testimony to establish that her exposure caused her to develop acute sinusitis, which significantly aggravated her asthma condition. The defendants’ objection to this evidence is based on the lack of scientific evidence that such a short exposure could have caused the development of sinusitis, and that sinusitis, as plaintiff contends, can aggravate her asthma condition.
Both sides have provided the court with affidavits from a number of experts of impeccable credentials in the medical practice and treatment of pulmonary diseases along with the opinions of those in the academic and research areas of such diseases. Moreover, they have provided the court with a wealth of source materials reviewing the research and clinical studies of asthma and sinusitis.
The seminal case is, of course, Frye v United States (293 F 1013 [DC Cir 1923]), the case that endowed this type of motion with its name. Frye instructs us that when a new or novel scientific technique or theory is challenged, the court’s task is to seek out the opinions of the relevant scientific community. If there is general acceptance in the scientific community, the expert can testify to it. If there is not general acceptance by that community, the expert cannot testify. The criticism of this approach is that it may exclude new scientific information which has not yet been tested. Nevertheless, this is the test that applies in New York (People v Wesley, 83 NY2d 417 [1994]).
What are the opinions of the relevant scientific community? There are three very talented experts on the plaintiffs side. Both sides have provided the court with a multitude of original writings in this area.* One of these articles and information on a couple of Web sites, which are also cited in plaintiff’s brief, caught the court’s attention. The article, a review article by B.A. Muller, is entitled Sinusitis and Its Relationship to Asthma (108 Postgraduate Medicine [No. 5] [Oct. 2000]): “Considerable clinical and research evidence substantiates the relationship *225 between sinusitis and asthma.” There is also the Web site of North Shore-Long Island Jewish Hospital, the hospital whefe Dr. Feinsilver, one of defendants’ two expert witnesses, employs his skills: “According to the National Institute for Allergies and Infectious Diseases, the American Academy of Allergy, Asthma, and Immunology, and other organizations, triggers for asthma include * * * Respiratory Infections and Sinusitis * * * and may precede an asthma attack.” Finally, the National Institute of Allergy and Infectious Diseases states that “If you already have asthma, then get sinusitis, you may experience worsening of your asthma * * * There is an association between asthma and infectious diseases.”
I have spent more time on plaintiffs submissions than on defendants’. The reason for that is that the court’s job is not to choose between the two theories. Plaintiffs expert offering is being attacked. The court’s job is not to decide who is right and who is wrong, but rather to decide whether or not there is sufficient scientific support for the expert’s theory. An oversimplification of this has been described as counting scientific votes, not to determine who wins or loses, but only to see that there is a substantial portion of the scientific community that supports the causal relationship between environmental tobacco smoke, sinusitis and asthma (Selig v Pfizer, Inc., 185 Misc 2d 600 [Sup Ct, NY County 2000], affd 290 AD2d 319 [1st Dept 2002], lv denied 98 NY2d 603 [2002]).
Defendants claim that there is no evidence showing that such short-term exposure to secondhand smoke can cause sinusitis. While it is true that plaintiff only worked at defendants’ company for a little over six weeks, she did endure constant exposure over the entire workday for that entire time. No minimum period of time for exposure could ever be arrived at with any degree of accuracy. That figure would depend on the varying length of times of exposure, the volume of secondhand smoke in the air, the different sensitivities of people to environmental smoke and the intensity of their sinusitis and asthma conditions. Courts have faced such obstacles in asbestos exposure, but that has not prevented many juries from determining that asbestos caused such diseases as asbestosis, lung cancer and mesothelioma.
The point is that there is a scientific consensus that tobacco smoke causes sinusitis, which aggravates asthma. Whether the length of time that plaintiff was exposed was sufficient to put the process into play is not a question of law, but one for the jury. The result of the foregoing discussion establishes that *226 there is ample justification for allowing plaintiffs expert to testify. It must be emphasized that I have not decided whether plaintiffs experts are right or wrong, but only that the testimony of the relationship between asthma, sinusitis and secondhand smoke can be testified to along with opinions concerning the results of that relationship.
Defendants have also attacked Dr. Tichenor’s credentials as an expert in the field of sinusitis and asthma. The court will not deal with that issue here as it is not relevant to establishing whether the science involved is admissible. Plaintiffs expert’s credentials may be attacked at trial but the parties are on notice that the court considers the training experience and education of such witnesses in determining whether they are qualified to testify (Werner v Sun Oil, 65 NY2d 839 [1985]). Generally, a doctor can testify to areas of medicine that he or she does not specialize in but in one way or another has been involved in the area (Bodensiek v Schwartz, 292 AD2d 411 [2d Dept 2002]).
The defendants have also expressed the view that while there may be a relationship between sinusitis and asthma, plaintiff has failed to explain the mechanism through which such cause and effect occurs. Actually, if one reads Dr. Tichenor’s affidavit he does offer a theory of the sought for mechanism. Other theories are expounded in the affidavits and exhibits in opposition to the defendants’ motion. That is not an inquiry under Frye, although it is a legitimate one for science.
The court notes that the traditional approach in Frye hearing cases is to hold an in limine hearing at the start of the trial or sometimes even during the trial. That is a far less productive way of proceeding and is a waste of the jury’s time as it sits and waits while the hearing hurries along and the judge’s equally hurried decision is made without sufficient time to study and reflect. Here the motion is made well in advance of the trial, and avoids those disadvantages. Moreover, the purveyor of the expert testimony will not have to worry about the cost of the time and expense of bringing him/her to the trial with the risk that he/she may not be able to testify. Moreover, in many instances (this being one of them), no evidentiary hearing will be necessary. All of the evidence in the form of affidavits and exhibits will have been furnished to the court (Selig v Pfizer, supra). Scientific evidence, such as is involved in this motion, is extraordinarily complex and daunting for the untrained minds of the bench and bar, more so than in virtually any other area of the law. The more time that is available *227 for examination, study and reflection, the truer and more accurate will be the decision.
Accordingly, it is ordered that the motion by defendants to preclude the testimony of Dr. Tichenor and any other qualified witness on the interrelationship between asthma, sinusitis and secondhand smoke is denied, and their opinions about the effects of this relationship may be testified to.

 Although the bulk of plaintiffs offering is about three times the size of defendants’.