■ MATTHEW SAULPAUGH, an Infant, by CHRISTINA M. SAULPAUGH, His Parent, Appellant, v BURTON O. KRAFTE et al., Respondents, et al., Defendants. [774 NYS2d 194]—

Kane, J. Appeal from two judgments of the Supreme Court (Stein, J.), entered October 11, 2002 and October 21, 2002 in Columbia County, upon a verdict rendered in favor of defendants.

In this medical malpractice action, all parties agree that plaintiff has suffered brain damage. During the trial against, among others, defendant Burton O. Krafte, the physician who delivered plaintiff by cesarean section, plaintiff presented the redacted videotaped expert testimony of pediatric neurologist Leon Charash. Supreme Court had redacted portions of the videotape following defendants' motion to preclude Charash's testimony pursuant to *Frye v United States* (293 F 1013 [1923]). The redacted testimony related to Charash's theory that plaintiff's disabilities resulted from protracted fetal head compression due to labor contractions, which allegedly squeezed the blood out of plaintiff's head thereby depriving his brain cells of oxygen. Charash asserted that circulation to the head was interrupted and blood was shunted away from the middle cranial cavity of the brain during protracted uterine contractions. He opined that because of this mechanism, none of the usual symptoms of oxygen deprivation (such as hypoxic ischemic encephalopathy) would be present. The jury returned a verdict finding that Krafte deviated from accepted medical practices, but those deviations were not a substantial factor in causing plaintiff's injuries, and it exonerated all other defendants. Plaintiff appeals, with his arguments limited to the *Frye* issue.

Considering the wide discretion accorded trial courts in evi-

dentiary rulings (*see People v Hansen*, 290 AD2d 47, 54 [2002], *affd* 99 NY2d 339 [2003]), and the inadequacy of plaintiff's support for its expert's theory, we will not disturb Supreme Court's determination with regard to the *Frye* issue. New York courts permit expert testimony based on scientific principles or procedures only after the principle, procedure or theory has gained general acceptance in the relevant scientific field (*see People v Wesley*, 83 NY2d 417, 422 [1994]; *Frye v United States, supra* at 1014). "[W]hile courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs" (*Frye v United States, supra* at 1014). The burden of proving general acceptance rests upon the party offering the disputed expert testimony, here plaintiff (*see Lara v New York City Health & Hosps. Corp.*, 305 AD2d 106 [2003]).

Defendants opposed Charash's testimony by proffering the affidavit of a pediatrician specializing in neonatology, who averred that Charash's theory was not generally accepted in the medical field or supported by medical literature. Plaintiffs responded by supplying three expert affidavits. Charash's own affidavit relied upon his experience and mentioned a textbook, lectures and conferences which discussed and supported his theory, but he failed to specify any such conferences and did not cite any specific portion of the textbook. The other two expert affidavits attest to general acceptance of Charash's theory regarding brain damage due to head compression and lack of oxygen, but do not expressly mention the core of his theory that uterine contractions can squeeze blood out of the fetal head and lead to the type of brain damage from which plaintiff suffers. They failed to explain how plaintiff's cerebral cortical cells could have been deprived of oxygen during birth with no clinical manifestations during his newborn period. These experts also generally mention having attended lectures, seminars and conferences that addressed this theory, yet failed to identify any specific conference. Charash did not refer to, nor did he mention that, he relied upon any controlled studies or accumulated clinical data. None of the affidavits refer to any scientific studies or reported medical cases which support Charash's theory. As Supreme Court noted, the trial testimony of one of the experts who submitted an affidavit supporting Charash's theory seemed to contradict, or at least never mentioned, that theory.

Broad statements of general scientific acceptance, without accompanying support, are insufficient to meet the burden of

establishing such acceptance (*see Stanski v Ezersky*, 228 AD2d 311, 312 [1996], *lv denied* 89 NY2d 805 [1996]). Absent any controlled studies, clinical data, medical literature, peer review or supportive proof indicating that Charash's theory was generally accepted by the relevant medical community, Supreme Court properly excluded testimony regarding that theory (*see Lara v New York City Health & Hosps. Corp., supra* at 106; *Selig v Pfizer, Inc.*, 290 AD2d 319, 320 [2002], *lv denied* 98 NY2d 603 [2002]; *Stanski v Ezersky, supra* at 312). As the motion papers failed to raise an issue of fact, it was unnecessary for the court to hold a *Frye* hearing.

Crew III, J.P., Carpinello, Rose and Lahtinen, JJ., concur. Ordered that the judgments are affirmed, with costs.