■ LINDA MARSO, Appellant, v HENRY NOVAK, M.D., et al., Respondents. [840 NYS2d 53]—

Judgment, Supreme Court, New York County (Faviola A. Soto, J.), entered July 29, 2005, which, upon the prior grant of defendants' motion for judgment notwithstanding the verdict, dismissed the complaint, unanimously affirmed, without costs.

In this medical malpractice action, plaintiff suffered a bilateral stroke at the age of 43. Upon her admittance to the hospital, one of the first findings made by Dr. Keith Siller, her treating physician, was that plaintiff was suffering from bradycardia since her heart beat had slowed to 27 beats a minute.* Subsequently, the treating physicians at NYU became convinced that bradycardia was the only possible cause of the bilateral stroke, and that the stroke could have been prevented had defendant, Dr. Novak, inserted a pacemaker in the year prior to plaintiff's stroke.

---

* Bradycardia is defined as any heart rate below 60 beats per minute.

Dr. Siller who was also plaintiff's expert witness on causation at trial, testified that all other possibilities for causation of the stroke were excluded by testing. He admitted, however, that it is not generally accepted in the scientific community that bradycardia is a risk factor for the type of embolic stroke suffered by plaintiff.

The lower court granted defendants' motion for judgment notwithstanding the verdict on the grounds that plaintiff had failed to present a prima facie case because her theory of causation is not generally accepted in the scientific community as required by the *Frye* doctrine (*see Frye v United States*, 293 F 1013 [1923]; *People v Wesley*, 83 NY2d 417 [1994]).

On appeal, plaintiff asserts that the theory does not implicate *Frye* concerns since it resulted from the generally accepted methodology of "differential diagnosis" which is essentially a process of elimination by diagnostic testing. For the reasons set forth below, we disagree.

In *People v Wesley*, the Court of Appeals explained that the *Frye* doctrine requires that expert testimony be based upon a scientific principle or procedure which has been "sufficiently established to have gained general acceptance in the particular field in which it belongs" (83 NY2d at 423 [internal quotation marks and citations omitted]). The Court held that a *Frye* inquiry poses the elemental question of "whether the accepted techniques, when properly performed, generate results accepted as reliable within the scientific community generally" (83 NY2d at 422). In our recent holding, *Nonnon v City of New York* (32 AD3d 91 [2006]), this Court deemed epidemiology and toxicology sufficiently established sciences, and thus allowed expert findings based on studies in those fields admissible without *Frye* hearings.

Plaintiff interprets *Nonnon* to mean that generally accepted methodology such as differential diagnosis when properly performed leads to admissible expert conclusions. This case prompts us to add "but not when there is a generally or widely held view in the scientific community rejecting such conclusions outright." In this case, plaintiff's expert's own unambiguous answer at trial was that the result generated, which purportedly confirmed the expert's initial theory, was not accepted in the medical community.

To accept plaintiff's "methodology-only, ignore-the-conclusion" approach would circumvent the rationale for the *Frye* doctrine. As defendants correctly contend on the basis of this Court's precedent, it is plaintiff's burden to show that his or her expert's *theory* is generally accepted in the relevant com-

munity (*Lara v New York City Health & Hosps. Corp.*, 305 AD2d 106 [2003]; *see also Styles v General Motors Corp.*, 20 AD3d 338, 342 [2005, Catterson, J., concurring] ["'(t)he *Frye* 'general acceptance' test is intended to 'protect juries from being misled by expert opinions that may be couched in formidable scientific terminology but that are based on fanciful theories' " (citation omitted)]).

Further, given the circumstance that the plaintiff's theory of causation was not clarified until the testimony of her expert at trial, we reject plaintiff's contention that defendants, to preserve their *Frye* objection, were required to seek an in limine hearing. Concur—Tom, J.P., Friedman, Nardelli, Catterson and Malone, JJ.